UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD MUSTO, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) CASE NO. 19-cv-1788<br>) |
| v. | ) **CLASS ACTION**<br>) |
| PALMCO ADMINISTRATION LLC d/b/a INDRA ENERGY, | ) **JURY TRIAL DEMANDED**<br>)<br>) |
| Defendant. | ) |

Ronald Musto ("Plaintiff"), individually and on behalf of other persons similarly situated, by his attorneys, and for his Complaint against Palmco Administration LLC d/b/a Indra Energy ("Indra" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1. This is a consumer class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. arising out of Defendant's unlawful mass telemarketing practices to solicit consumers to purchase its goods and services, including natural gas and electricity.

2. Put simply, Indra violates the TCPA by placing unsolicited telemarketing calls to consumers' cellular telephones using an automatic telephone dialing system ("ATDS") without first obtaining their prior express consent—oral or written—as required by the TCPA.

3. The Rules and Regulations implementing the TCPA expressly prohibit initiating, or causing to be initiated, any telephone call to a cellular telephone that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system, without first obtaining the prior express written consent of the called party to receive such call.

4. Nevertheless, Indra violates the TCPA by failing to obtain the prior express written consent of consumers before bombarding their telephones with calls placed by an ATDS in order to sell its goods and services.

5. Plaintiff brings this action for damages and other legal and equitable remedies resulting from the conduct of Indra in negligently, knowingly, or willfully placing unsolicited telemarketing calls to Plaintiff's and other class members' cellular telephones without their prior express written consent in violation of the TCPA.

## PARTIES

6. Plaintiff is a citizen of the State of Pennsylvania residing in the City of Exeter.

7. Defendant is a New York limited liability company whose principal office is located at 8751 18th Avenue, Brooklyn, New York, 11214.

## JURISDICTION AND VENUE

8. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq*.

9. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute.

10. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a nationwide class, which will result in at least one class member belonging to a different state than Defendant.

11. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

12. Venue is proper in this District because a substantial portion of the events complained of occurred here, *i.e.*, Defendant operated its unlawful telemarketing campaign from its headquarters located in this District.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

13. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

14. Section 227(b)(1)(A)(iii) of the TCPA provides, in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> \*    \*    \*
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

15. Thus, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of ATDSs or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

19. This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018) (emphasis supplied).[1]

20. Predictive dialers fall within the scope of the term ATDS. *See Marks*, 904 F.3d at 1051 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.").[2]

---

[1] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

[2] The FCC has explained that while previous autodialers generated random numbers to call, "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003). So a predictive dialer, which "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," *id*. at 14091, "constitutes an

21. Courts have also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA. *See, e.g.*, *Marks*, 904 F.3d at 1051 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—*language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA*.") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

22. The FCC has also issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or prerecorded message to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 2008 WL 65485 (2008).

23. The FCC took steps to further protect consumers from unwanted autodialed marketing calls pursuant to the TCPA.

24. Among other things, the FCC issued a Declaratory Ruling requiring that telemarketers obtain "prior express *written* consent" for all autodialed telemarketing calls to wireless numbers. 2012 FCC Ruling, 27 F.C.C. Rcd. at 1831 (emphasis added).

25. The FCC has defined prior express written consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing

---

automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers," 23 F.C.C. Rcd. at 566. In other words, an autodialer "has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15932 n.5 (2012) ("2012 FCC Ruling").

messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

26. Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained. 2012 FCC Ruling, 27 F.C.C. Rcd. at 1844.

27. Thus, under the TCPA, the burden is on the telemarketer—here, Indra—to obtain, document, and prove prior express written consent.

28. Further, courts have long held that that a "called party" under the TCPA is the recipient of the call, not the party the caller was intending to reach.[3]

## FACTUAL ALLEGATIONS

29. Plaintiff is a subscriber of a cellular telephone associated with telephone number (570) XXX-1283.

30. Indra is an energy company that sells electricity and natural gas to consumers.

31. According to Indra's website, Indra markets itself to "millions of residential and commercial utility customers across 9 states and more than 64 utility markets."

32. Over the past year, Plaintiff has received several unsolicited telemarketing telephone calls from representatives of Indra advertising its services and goods.

33. In particular, Plaintiff received various telemarketing calls to his cellular telephone from representatives of Indra that were placed for the purpose of marketing or selling Indra's electricity and natural gas.

34. Indra called Plaintiff from the following telephone number: (888) 269-7397.

---

[3] *See, e.g.*, *Osorio v. State Farm Bank F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet*, 679 F.3d at 638-39.

35. This telephone number is associated with Indra.

36. For example, when a call is placed to the aforementioned number, one of Defendant's representatives answers the telephone stating: "Thank you for calling Indra."

37. An example of one such call occurred as recently as January 8, 2019.

38. At or around 2:15 PM EST, Plaintiff received a telemarketing call from Indra that was placed from the following telephone number: (888) 269-7397.

39. When Plaintiff answered the call, he was connected with a representative from Indra named Susan Dean who then solicited Plaintiff to purchase natural gas and electricity from Indra.

40. After a brief conversation, Plaintiff informed the Indra representative that he was not interested, requested that he be taken off Indra's marketing list, and terminated the telephone call.

41. Plaintiff estimates that he has received approximately five telemarketing calls to his cellular telephone from Defendant—all placed for the purpose of soliciting his business.

42. On information and belief, other calls occurred on the following dates: January 2, 2019; January 4, 2019; and January 5, 2019.

43. Plaintiff believes he spoke with an Indra representative on at least two different occasions and both times requested to be taken off of Indra's marketing list.

44. Despite this fact, Indra representatives continued to bombard his cellular telephone with telemarketing calls.

45. Plaintiff never provided his cellular telephone number to Defendant.

46. Plaintiff was never one of Defendant's customers.

47. Plaintiff never requested information about Defendant's services.

48.     On information and belief, when contacting consumers, Indra uses an outbound calling system that automatically dials a list of telephone numbers stored by Defendant.

49.     Defendant's outbound dialing system uses algorithms to predict when Defendant's representatives will be available to take a call, and then automatically dials the numbers stored on Defendant's outbound dialing system.

50.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, telephone contact made by Defendant to Plaintiff on his cellular telephone occurred via an ATDS as defined by 47 U.S.C. § 227(a)(1).

51.     To be sure, when Plaintiff answered the calls from Defendant, there was a long pause and then a clicking noise before one of Defendant's representatives came on the line.

52.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, Defendant placed its calls to Plaintiff's cellular telephone number by using (i) an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a person will be available to take the call, or (ii) equipment that dials numbers and, when certain computer software is attached, also assists persons in predicting when a sales agent will be available to take calls, or (iii) hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, or (iv) hardware, software, or equipment that the FCC characterizes as a predictive dialer through the following, and any related, reports and orders, and declaratory rulings: *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd 17459, 17474 (September 18, 2002); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of*

*1991*, 18 FCC Rcd 14014, 14092-93 (July 3, 2003); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008).

53. At no point did Indra obtain Plaintiff's prior express written consent to place telemarketing calls to his cellular telephone.

54. Indeed, all of the telemarketing calls alleged herein that Defendant placed to Plaintiff's cellular telephone were made without Plaintiff's prior express written consent to receive such calls.

55. The calls were annoying and harassing to Plaintiff, and an invasion of his privacy.

56. The calls violated the TCPA because they were made without Plaintiff's prior express consent—written or oral.

57. Not surprisingly, Indra's unlawful telemarketing practices have led to significant backlash from consumers.

58. The internet is bereft with online reviews warning consumers about Defendant's unlawful practices[4]:

> **Me too**
> 7 Dec 2017
>
> This number has been calling for months. Tried calling back it rings and hangs up. It is a scam!
>
> Caller: 888-269-7397
> Call type: Scam suspicion
>
> Reply  !

---

[4] Reviews available at: https://800notes.com/Phone.aspx/1-888-269-7397, last accessed March 13, 2019.



59. By making the unauthorized telephone calls alleged herein, Indra has caused consumers (including Plaintiff) actual harm and cognizable legal injury.

60. This includes the aggravation and nuisance and invasions of privacy that resulted from the receipt of such telephone calls, in addition to a loss of value realized for the monies consumers paid to their telephone carriers for the receipt of such calls.

61. Furthermore, the telephone calls interfered with class members' use and enjoyment of their cellular telephones, including the related data, software, and hardware components.

62. Indra also caused substantial injury to their cellphones by causing wear and tear on their property, consuming battery life, and in some cases appropriating cellular data or minutes.

63. In order to redress these injuries, Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the TCPA for statutory damages of $500 to $1,500 per telephone call.

64. On behalf of the class, Plaintiff also seeks an injunction requiring Defendant to cease placing telemarketing calls to consumers until such time as it receives prior express written consent from all such persons.

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated (hereinafter referred to as "the Class").

Plaintiff proposes the following Class definition, subject to amendment as appropriate:

All persons and entities throughout the United States (1) to whom Palmco Administration LLC placed one or more calls, (2) for the purpose of advertising its goods or services. (3) directed to a number assigned to a cellular telephone service, (4) by using an automatic telephone dialing system or an artificial or prerecorded voice, (5) absent prior express written consent, (6) within four years preceding the date of this complaint through the date of class certification.

66. Plaintiff represents, and is a member of, the Class.

67. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

68. Plaintiff does not know the exact number of members in the Class, but on information and belief, the number of Class members at minimum is in the thousands.

69. Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their cellular telephone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

70. This Class Action Complaint seeks injunctive relief and money damages.

71. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

72. The disposition of claims in a class action will provide substantial benefit to the parties and the judicial economy of the court in avoiding a multiplicity of identical suits.

73. The Class can be identified easily through records maintained by Defendant and third parties.

74. There are well-defined, nearly identical, questions of law and fact affecting all Class members.

75. The questions of law and fact involving the Class claims predominate over questions which may affect individual Class members.

76. Those common questions of law and fact include, but are not limited to, the following:

   a. Whether non-emergency calls made to Plaintiff and Class members' cellular telephones used an artificial or prerecorded voice or an automatic telephone dialing system;

   b. Whether such calls were made by Defendant;

   c. Whether Defendant can meet its burden of showing it obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to make such calls;

   d. Whether Defendant's conduct was knowing or willful;

   e. Whether Defendant is liable for damages, and the amount of such damages; and

   f. Whether Defendant should be enjoined from engaging in such conduct in the future.

77. As a person who received numerous and repeated telephone calls using an automatic telephone dialing system, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member.

78. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

79. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

80. A class action is the superior method for the fair and efficient adjudication of this controversy.

81. Class-wide relief is essential to compel Defendant to comply with the TCPA.

82. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for the violation of the TCPA are relatively small.

83. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members did not provide prior express consent, as required under the statute, to authorize such calls to their cellular telephones.

84. Defendant has acted on grounds applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

85. Moreover, on information and belief, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CLAIM FOR RELIEF

### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

86. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-85 as if fully stated herein.

87. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an automatic telephone dialing system to place calls to Plaintiff's cellular telephone number without his express consent.

88. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the Class are entitled to damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Violation of 47 C.F.R. § 64.1200, *et seq.*

89. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-60 as if fully set forth herein.

90. Defendant violated 47 C.F.R. § 64.1200(a)(2) by utilizing at automatic telephone dialing system to place telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent.

91. As result of Defendant's violations of 47 C.F.R. § 64.1200, Plaintiff and the members of the Class are entitled to damages in an amount to be proven at trial.

## TRIAL BY JURY

92. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as the class representative under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging that Defendant violated 47 U.S.C. § 227(b)(1)(a)(iii);

e) Adjudging that Defendant violated 47 C.F.R. § 64.1200(a)(2);

f) Enjoining Defendant from continuing to place calls to Plaintiff's cellular telephone number, and from continuing to place calls to the cellular telephone numbers of members of the proposed class without prior express consent;

g) Awarding Plaintiff and the class damages under 47 U.S.C. § 227(b)(3)(B);

h) Awarding Plaintiff and the class treble damages under 47 U.S.C. § 227(b)(3);

i) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

j) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

k) Awarding such other and further relief as the Court may deem just and proper.

Dated: March 28, 2019 Respectfully submitted,

**RONALD MUSTO**

*/s/ Brittany Weiner*
Brittany Weiner
**IMBESI LAW P.C.**
450 Seventh Avenue, Suite 1408
New York, NY 10123
Phone: (646) 767-2271
Fax: (212) 658-9177
brittany@lawicm.com

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger (*pro hac vice forthcoming*)
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

**GREENWALD DAVIDSON RADBIL PLLC**
Michael L. Greenwald (*pro hac vice forthcoming*)
5550 Glades Road, Ste. 500
Boca Raton, Florida 33431
Phone: 561.826.5477
Fax: 561.961.5684
mgreenwald@gdrlawfirm.com

*Attorneys for Plaintiff and
the Proposed Class*